## WOOD v. STROUD.

No. 21382.    Opinion Filed Nov. 29, 1932.

Milsten & Milsten, for plaintiff in error.

Malcolm E. Rosser, for defendant in error.

KORNEGAY, J. This suit was begun January 8, 1917. Attachment was sued out and levied on some property along the line of the M., O. & G. Railroad, consisting of parts of lots 1 and 2, sec. 20, twp. 6 N., R. 19 E., and the buildings thereon appraised at $20,000, and the machinery and tools therein appraised at $40,000, and office furniture $250. The suit was to recover stipulated royalties on the sale of plows that a bankrupt corporation, managed by plaintiff, had agreed to pay to plaintiff on the sale of plows to be manufactured by the corporation under a patent, assigned by plaintiff to the corporation, which it never manufactured by reason of financial failure, resulting in bankruptcy of the corporation and its assets being sold at public sale by the trustee in bankruptcy pursuant to order of the bankruptcy court, at which sale the assets were bought by the defendant in error on October 24, 1914. Assignment of the patent is set out, relied on in the petition, and dated January 6, 1913, and the relevant portions are as follows:

"Witnesseth: That for and in consideration of the sum of one dollar ($1) in hand paid, the receipt of which is hereby acknowledged, and additional good and sufficient and valuable considerations moving from said party of the second part to said party of the first part, the said party of the first part does hereby assign, sell, transfer, set over, and deliver unto the said party of the second part, its successors, and assigns, all of a certain patent applied for in the Patent Office of the United States of America, being serial No. 639394, or any other number which said patent or invention may be designated or letters patent issued thereon in the Patent Office of the United States of America or elsewhere, covering certain improvements on plows, and farm implements and machinery, more particularly described in the original application filed in the Patent Office of the United States, which is made a part hereof; and said party of the first part hereby agrees to make any and all other or different formal assignments of said patent or invention, and each and every part thereof, as may be deemed necessary or required by the Commissioner of Patents of the United States, or a similar officer in any foreign country, in which country in which patent rights may be asked covering said invention or patent.

"The first party hereby also agrees to take all necessary steps to fully and properly protect and secure to said party of the second part the full and complete benefit of said invention and each and every part thereof.

"It being further agreed by the parties hereto as a part of the consideration of this assignment that said assignee, its successors or assigns, shall make or pay the royalty thereon, not less than ten (10) machines per each calendar month during the whole life of said patent, or the patent to be issued thereon, commencing the manufacture of such machines not later than six months from the date hereof, and to continue as aforesaid, upon failure to do so upon the party of said assignee, its successors or assigns, shall render this assignment void and of no effect.

"Be it understood and agreed that said assignee, its successors or assigns, shall pay the assignor herein a royalty of one (1%) per centum of the selling price of each of the large size machines; that is to say, of such machines as are in a class with the machine already manufactured and now being used for demonstrating purposes; and that said royalty be paid on all of such machines so made each and every three months after the same are sold: and that said assignor shall have access to the books of said assignee or its successors and assigns at all times for the purpose of determining the number of such machines sold."

The prayer was for the recovery of $2,767, representing the royalties that plaintiff claimed defendant to be liable for from date of purchase to time of suit, this amount representing one-half of the claimed royalty. Answer was filed March 13, 1917, admitting that exhibit "B", attached to the petition, was a true copy of a resolution of the board of directors of the bankrupt corporation of May 21, 1913, though such document does not appear to be attached. Liability for royalty was denied, and statement made that no machines were manufactured, and that there was no foundation for a claim.

Further statement was made of no claim or demand for payment of royalties until the instituting of the suit.

An amended answer was filed August 23, 1929, containing specific denials, and a general denial, and denying the purchase of the patent. There was a pleading that plaintiff had sought to reclaim the patent by proceeding in the bankruptcy court, which had been denied for want of equity, and further statement made that no machinery was sold or made. Further claim was made that the patent was of no value, and operations could not be successfully carried on thereunder, and abandonment both before and after the bankruptcy. There was further claim that one plow was exhibited to a lot of prospective purchasers of stock in the bankrupt corporation, which had not been made under the letters patent assigned to the corporation, and that plaintiff did not own the patent under the specification on which the plow was made, and that plaintiff and defendant and other parties had been sued by S. B. Kyle for one-half interest in the patent and the suit was still pending. There was further statement as to a judgment being held by defendant for $7,400 against plaintiff and assigned to defendant. Prayer was made for its recovery, and also for $60,000 for false representation arising out of the purchase of stock in the bankrupt corporation.

Trial was had by jury, and the parties introduced their proof, mostly documentary. The working arrangement between plaintiff and the bankrupt corporation was introduced, providing for his getting $50,000 in stock and five years' employment on a sliding scale as superintendent, his assigning his inventions as he might make them. There appears in the record a forfeiture declaration by plaintiff dated June 4, 1914, by reason of the failure of the company to manufacture machinery as called for in the assignment of the patent. There was also introduced in evidence the answer of the trustee in the reclamation suit, who claimed that by failure to record the contract, the mortgage creditors of the bankrupt's property had acquired rights and on that ground the reclamation suit depended.

A brief has been filed complaining of the court's action in sustaining a demurrer to the evidence, and several decisions are cited concerning the burdens assumed by an assignee. As applied to this case, there is no allegation of express assumption by defendant of a covenant to manufacture or sell the plow, or to pay stipulated royalties. The contract carried its own remedy as against the original corporation that went bankrupt, i. e., forfeiture. This was resorted to. The parties, after the bankruptcy, all appear to have abandoned the idea of manufacturing plows. The contract was largely personal, depending on personal qualifications. No claim to the right to manufacture plows under the patent appears to have been exercised by defendant below. The time for beginning was six months from January 16, 1913, being July 16, 1913. Neither did it occur to the plaintiff to ask for such manufacturing. The suit itself appears to have been a late thought, being born three and one-half years after the breach occurred, and lay apparently lifeless for over 12 years after defendant filed the answer of March 13, 1917, denying liability and denying any notice of claim for failure to pay stipulated royalties on plows not manufactured or sold, against the corporation of which plaintiff was manager, or the purchaser of the patent at the bankrupt sale.

It appears to us that express agreement to carry on operation under the patent was not alleged or proven, and that the things said and done would not in law create an implied contract to do so, and that the lower court did not err in sustaining the demurrer to the evidence.

The case is affirmed.

LESTER, C. J., and CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ.. concur. CLARK, V. C. J., and RILEY and HEFNER, JJ., absent.